I may please the court, Roger Diamond for the Plaintiffs and Appellants. Imagine how I would feel if I were about to present a case to this court and before I began my remarks the court asked for somebody from the audience to come forward and give the invocation. I would feel if the invocation were recited in a way that was contrary to my particular beliefs I might be relegated to feeling like I was an outsider not able to participate fully. Did we do something illegal when the deputy clerk said God save this honorable court? No, because the clerk did not ask that we pray in the name of Jesus Christ and did not take sides in any kind of religious dispute. We would, in terms of the appropriateness of that... Did the City of Lancaster take sides in a religious dispute? Indirectly, yes, and that is the problem because over time and the record is absolutely clear in this case Christian prayers, prayers in the name of Jesus Christ were given frequently in a period of about a year and the council meets every two weeks twenty prayers were given in the name of Jesus Christ. If we're in an isolated situation we might have a different case. To win this case on appeal we don't have to demonstrate that on one occasion there was a violation and that would be sufficient. I believe that should be the law but that's not necessary for us to prevail here because we are challenging the whole system in Lancaster that led to the repeated references to Jesus Christ and invocations over time. I know that the government or the City of Lancaster is arguing that the district court felt that we are singling out one particular prayer event which took place at the City Council meeting that immediately followed the vote of the citizens of Lancaster regarding the question of whether the prayer policy should be perpetuated where they continue to refer to Jesus Christ. That was the meeting that triggered the violation because this was a question of whether or not the city was going to continue its policy. We could have theoretically sued just to challenge the policy itself without waiting to see whether or not the policy actually led to a particular violation but that's the way we did it. The policy just to kind of farm out this invitation to all of the various cults in town and let them take a volunteer to fill one of these... We're not challenging the policy theoretically on its face without regard to the effect of the policy. It's the combination of the policy, the ballot measure, the reference to Jesus and the actual prayers themselves over time as well as the one that immediately followed the election that resulted in the adoption of Proposition I. It's all together. We do not have to single out one particular aspect of the violation. It's a continuing violation of the First Amendment over time. What happens if someone has an objection not to Jesus Christ but to Abraham or Muhammad or Martin Luther, Confucius, Buddha, I mean we can make a long list. Tom Cruise in Scientology. Where do we draw the line? Well, I believe, but it's not necessary for us to prevail in this case, but since you asked my opinion I will give it. I believe that the State Court of Appeal in Rubin v. City of Burbank had it correct that if you make a reference to a particular religious figure and you're doing it as a part of the prayer as opposed to just giving some explanation and some argument and you happen to mention a religious figure not part of a prayer, that would be a different situation. But if it's part of a prayer where you're praying to Allah and you say, excuse me, I have my prayer mat here. I need to bow down because it's the time of the day where we pray to Mecca and they do it five times a day, certain religions. If you said, okay, everybody's going to bow down on a prayer mat now and pray to Allah, I think that if I were at that city council meeting and everybody took out a prayer mat and started praying to Allah and I'm not a member of that particular religion, but the... That's not this case. Nobody here was forced to bow down, to face a certain direction, or to do anything like what you just described. That's a factual difference, obviously. The principle is the same, however, because when you ask people to pray in the name of Jesus and they pray in the name of Jesus and you're there to... They didn't pray in anybody's name, did they? Jesus invited them to come and do this ceremonial liturgy thing to open the meeting. Like saying, wake up everybody. This is going to be an important meeting. Pay attention. Instead of saying it that way, they go through this liturgical nonsense about invocation because George Washington did it and everybody since then has been doing it. But the Supreme Court in Marsh v. Chambers said, in effect, in footnote 14, which was approved in the Allegheny case, which came later, which, by the way, wasn't even mentioned by the city in its reply brief, they specifically referred to the fact that after the legislator in the Nebraska case, it's a unicameral legislature there, so it's one legislator body, he sued, he himself sued, the member of the Nebraska legislature sued to invalidate the practice of what Nebraska was doing over time, hiring the minister who kept praying to Jesus. The court took out the mention... But Marsh upheld all of that. No, no, no. Footnote 14 is just an observation that in the future they've changed their policy, but they affirmed the existing policy. Well, it so happens that the existing policy regarding paying of ministers and so forth, that was upheld, but the court went out of its way to say that all references to Jesus were removed. Now, that's not a trifling thing. You're relying on footnote 14 for that very broad proposition? No, I'm relying upon what the Supreme Court in a five-member majority said, speaking through Justice Blackmun in a later case, Allegheny v. ACLU, referred back to what the Supreme Court did in Marsh v. Chambers and said with approving notation that that was important. They referred specifically to the footnote. So if it's just a footnote, why would the five-member majority in the U.S. Supreme Court's decision in the Allegheny case refer back to that and indicate that that was done? So it's not just a footnote. Footnotes are important. But the holding in Marsh does not help you. The holding, forget the footnote for a moment. How does Marsh's holding help you when they approve long-standing member of one minister over years invoking a Christian prayer? Well, what we can get from Marsh is that if it's not a Christian prayer because that was taken out, I think what Marsh stands for is that you could have a non-Christian, non-specific religion type prayer, sort of a generic prayer that could pass constitutional muster. That does seem to be what we can get from Marsh v. Chambers. I don't believe, although I think one of these days the U.S. Supreme Court may reverse that decision, but right now we have that decision and so we're following it. I think that Lancaster can allow non-religious type prayers where people just come up because it's not a school. And I know you had the decision in Newdow v. U.S. Congress, and I know I understand two of you were, Justice Goodwin wrote the opinion in that case regarding the under God issue, and I know that Justice O'Scanlan wrote the dissent on the denial of the petition for rehearing, and that I guess stirred up a little bit in the court. It's not this issue. We're still dealing with public prayer in a government setting, which I think maybe is a good segue to, is this private speech or government speech? Absolutely government speech. You just can't come in and just say what you want and anything and just start speaking. The government controls the communication here. You're there for a particular city business. The invocation is part of the process. The invocation deliverer is printed on the agenda. When you look at the minutes, and I have the minutes from the next city council meeting, they refer back to who delivered the invocation. So it's part of the process. It's not just somebody coming in off the street and addressing the council. And the council controls the whole system because you just can't come in and just start speaking to the city council. Just like right now, if somebody came in off the street here in Pasadena and wanted to talk to you, you, this court, controls the situation here. The city council acts in the same way. They control the meeting. And so it's clearly government speech. They can decide whenever they want to disband the invocation altogether, and they can say we only want people who deliver the invocation to speak in nonreligious sort of broad, generic principles. Mr. Diamond, doesn't that put you in a real quandary because of the establishment clause? If you argue, as probably you should, that this is government speech, well then, does the government have the right to tell you what you can say and what you can't say under the establishment clause? Well, they can prevent the establishment clause from being violated, and they can say to the speaker, you cannot refer to any particular religious leader. You cannot make this a religious prayer. You can speak in general. So the city council... Make it not a prayer, then. The city council has the authority to disband it. If this were a pure free speech case, why would the city council have any authority to regulate the speakers who come before them? The city council does have that authority. So if somebody wants to make that decision that this is something they want to continue, what is the basis upon which it can then say, well, you can say this, but you can't say Allah, but you can't say God? I mean, once you get into that situation, aren't you afoul of the First Amendment? No, because you have to look on the First Amendment. There's parts of the First Amendment. The first part of the First Amendment is the establishment clause. That comes even before freedom of religion. But the city council has to be able to avoid violating the establishment clause of the First Amendment. And so the city council is not forced to allow invocations. If the city council wants to do it, and it would not violate the establishment clause if it chose to do so, if the city council wants to establish a procedure where people can come forward and give sort of generic type of prayers, the city council can do so without violating the establishment clause. But if the city has a policy that allows people over and over again, repetitively, regularly, to come forth and speak in the name of Jesus and pray while non-Christians are sitting there saying, oh my gosh, I'm not standing up, I'm not saying amen to the prayer. But non-Christians can also apply to have their prayers recited at a meeting too. Well, but here the evidence in this case, of course, is that Lancaster is overwhelmingly a Christian community. And the evidence is unrebutted that a great majority of the time there were Christian prayers. But there's no evidence. Is there that a minority religion was excluded? In other words, a religion that is within the community that wanted to be heard was prevented from doing so? No, there's no evidence that anybody was excluded. But the way the system works, basically it results in a majoritarian control of the religious speech at that particular location. Because the reality is, and the evidence shows this, that the great majority of the religious institutions in Lancaster are Christian. And so it inevitably is the result from this process that you're going to have a great majority of the invocation delivers Christian. And this is what's going to happen. So the city cannot defend itself on the ground that, hey, it's not our fault that everybody here is Christian. And nobody's come here and asking for anything else. That results in a violation of the Establishment Clause. That is the violation. We have a great... As applied situation then, rather than as a de jure situation. Correct. What about the old legal concept of de minimis non curat lex? Does it have any place in dealing with this invocation question which keeps coming up all over the country at football games and God knows where else? I've read so many opinions from the different justices regarding the issue. They overwhelmingly say, most of them say, that you cannot have a de minimis violation of the Constitution. If it's a violation of the Constitution, it's a serious matter. And I know people who are raised in the Christian belief, who regularly accept Jesus Christ as their Savior under John 3.15. He is the only way to get to heaven. For people who have been brought up to believe that, don't think that it's a major deal for somebody to pray in the name of Jesus. It's part of their DNA to pray in the name of Jesus. But if you're Jewish or something else, and you know that the Christians say the only way to get to heaven is to accept Jesus Christ as your Savior. And if you don't under John, and I have the Bible right here. That's okay. I have a question for you, if I may. It's not de minimis. Yes, Your Honor. Thank you. So are you saying that the legislation ought to be tailored to the community if somebody chooses to have a prayer or whatever you want to call it before an opening session? Do we look at the makeup of the community to determine who's the majority or minority? No. So what does that have to do with the issue before? Well, it shows how the violation occurred, but it would not be a cure to say, well, we're going to have 50% this or 50% that. It's the cumulative effect of what has happened that triggered the violation. I might point out, I understand you're visiting from Toledo, and Judge Middlebrooks of the Southern District of Florida was a visiting judge in the Palfrey v. Cobb case. And I know that the city cites with approval Palfrey v. Cobb never mentions the distinguished, brilliant dissenting opinion by the district judge, not the circuit judge. So I respectfully recommend that you read Judge Middlebrooks' dissenting opinion. I know the city does think that two-to-one decisions are not as good as three-to-zero decisions because in Joyner v. Forsyth County, which we're relying upon, they mention, of course, that was a split decision. They don't mention, of course, that the Palfrey case was a split decision. Counsel, help us out here. What specifically are you asking for this court to do in this case? Reverse the judgment of the district court and rule that, number one, if you can do so, but it's not necessary for us to win that you do this, that the reference to Jesus Christ renders this a sectarian prayer, and under Rubin v. City of Burbank, that's a violation by itself. Or, in the alternative, your opinion can say that reference alone to Jesus Christ was not sufficient by itself, but the fact that over time the prayers continue to be primarily and significantly Christian in nature, that tips the scale in favor of the plaintiffs requiring that the city disband its practice, or you can give the city the option of ordering the speakers to refrain from giving overtly Christian prayers. The city, in other words, has some flexibility in terms of how it complies with the judgment. I assume if you want us to instruct the city that they should restrict this to exclude overtly Christian prayers, that would also apply to overtly Jewish prayers or Muslim prayers? Absolutely. Absolutely. They should not have overtly religious prayers favoring one religion over the other, because that forces people who have business before the city council to feel they're excluded, to feel that, gee, I'm not part of the mainstream here, I don't think I'm going to get a fair hearing before the city council if I'm not part of it. They must have noticed, for example, that I didn't stand up and pray in the name of Jesus, I didn't say amen, or if it's a Muslim procedure, I didn't prostrate myself on the prayer mat and pray to Allah, so they must have noticed that I'm not really part of them, so maybe I'm not going to get the zoning clearance that I need for my shopping center. You feel that way. Now, again, to people who are part of the mainstream, they can't conceive of this, and I know I cited some opinions by some very learned judges who recognize the fact that if you feel excluded and feel marginalized, it's a violation of the First Amendment Establishment Clause if that's the result of the practice of the city. And so in terms of the question pending that you asked, Your Honor, you do have some flexibility in terms of the remedy. You can remand it to the district court and let the district court conduct an evidentiary hearing on what remedy would be available to the city given the fact that what the city has previously done is allow the Establishment Clause of the First Amendment to be violated. And it doesn't matter, this is not a criminal case where you have to have specific intent, if the effect, as the courts have said in many of these cases, if the effect is that we have a situation where outsiders feel marginalized, where they are offended by the repeated references to one deity, if the effect of the practice is to cause these things to occur, that's enough to establish a violation of the First Amendment Establishment Clause. I do want to reserve some rebuttal time. You have a minute and 16 seconds, Counselor. Oh, my gosh. All right, I'll reserve some time. You may do so. We'll hear from the city. Matthew, Chapter 6, also, pray in private, Jesus said. May it please the Court, Alison Burns for Appellee, City of Lancaster. This case presents an unabashed effort to overturn the United States Supreme Court's decision in Marsh v. Chambers and to obtain a ruling from this Court requiring Lancaster to tell people how to pray. Appellants are clear in their briefs that this challenge, to the single invocation given at the Lancaster City Council meeting on April 27, 2010, their overarching goal is reversal of Marsh v. Chambers, an institution of a rule requiring non-sectarian prayer. Appellants recognize that they may not, at this Court, overturn the decision of the United States Supreme Court. Instead, they urge this Court to read Marsh so narrowly that the very invocations found to be constitutionally permissible in Marsh would, under the new rubric proposed by appellants, become suddenly unconstitutional. Under the interpretation urged by appellants, Lancaster would be required to dictate how third-party volunteers pray to their god or gods and would run far afield of the United States Supreme Court's ruling in Marsh. Can I have you comment on opposing counsel's statements here this morning that the Supreme Court in the Allegheny case seemed to limit the Marsh holding to the fact that the legislative prayers in Marsh did not reference Jesus Christ? So I take it that he's saying, is Marsh limited to only non-sectarian prayers? No. Okay. What do we do with Allegheny, if anything? Sure. Allegheny is dicta. The reference to Marsh in Allegheny is dicta. And, indeed, that dicta was the statement. Indeed, in Marsh itself, the Court recognized that not even the unique history of legislative prayer can justify contemporary legislative prayers that have the effect of affiliating the government with any one specific faith or belief. The legislative prayers involved in Marsh did not violate this principle because the particular chaplain had removed all references to Christ. Now, what the Court was talking about in Allegheny, in dicta, was the fact that the government was not affiliating with one specific belief. Remember, in Marsh, we had one Presbyterian chaplain for 16 years. In Lancaster, we rotate every meeting. We have six occasions in the year and four-month period before the Court where we had a metaphysicist praying to the good trees in the park. We had an occasion with an Islamic invocation and an occasion with a Sikh invocation. We don't have a situation like many of the cases cited by appellants where there were no one other than Christians giving invocations. So your position is the content of the invocation is irrelevant so long as the city policy invites all. Absolutely, Your Honor. In fact, that's exactly what the Marsh Court said. The Marsh Court said the content of the prayer is not of concern to judges where, as here, there is no indication that the prayer opportunity has been exploited to proselytize or advance one or disparage any other faith or belief. That being so, it is not for us to embark upon a sensitive evaluation or to parse the content of a particular prayer. There were some Supreme Court cases that considered the endorsement element. Is that still a viable element to consider in whether a prayer is a governmental endorsement of a particular faith or branch of a faith? The endorsement issue comes up when you're using the Lemon Test. And in Marsh, the Court, following after Lemon had been decided, did not follow Lemon. Instead, the Court in Marsh looked at the unique history of legislative prayer. And in light of the fact, among other things, that three days after Congress authorized the appointment of paid chaplains, final agreement was reached on the Bill of Rights, including the First Amendment, over which we're here today, that that unique history required a different evaluation than the one established in the Lemon case. And indeed, in Marsh, the Court ruled that the invocations in question were constitutionally permissible based on a record that contained explicitly Christian references. And indeed, the record before the Court in Marsh only included prayers from 1975, 1978, and 1979. It was not until 1980 that Reverend Palmer, the Presbyterian minister in question in Marsh, took out the references to Christ. Among the prayers that the Court found constitutional in Marsh was the one cited by Justice Stevens in his dissent, where Reverend Palmer prayed, Father in heaven, the suffering and death of your son brought life to the whole world, moving our hearts to praise your glory. The power of the cross reveals your concern for the world and the wonder of Christ crucified. The days of his life-giving death and glorious resurrection are approaching. This is the hour when he triumphed over Satan's pride, the time when we celebrate the great event of our redemption. And it goes on. But, Your Honors, that prayer was found constitutional in Marsh, is actually in the dissent in Marsh. The prayer at issue here, Reverend Hearns simply concluded the prayer, excuse me, past Bishop Hearns, I devoted him,  no other specifically Christian reference in his prayer. What do I do with the Joyner case, which your opponent relies on, where the Court held that a county board of commissioners opening meetings with sectarian prayers violated the establishment clause? We disagree with Joyner. Putting simply. So we can't distinguish it. We just disagree. Actually, we can. We can distinguish it, Your Honor. There was not a single non-Christian prayer in the record in Joyner. Here we have not only a policy that allows all prayers, all comers, Christians, Islamists, Sikhs, anyone who comes is scheduled to pray, to give their invocation. Indeed, if an atheist came and asked to be given the opportunity to give an invocation, whether it be reciting poetry or having a moment of meditation, whatever they might choose to do consistent with their beliefs under the Lancaster policy, that would be permitted, all comers. The policy in Joyner was neutral, too. Right. But in practice in Joyner, they had absolutely no non-Christian prayers come. So that is a distinguishing factor. And the Court in Joyner specifically stated, infrequent references to specific deities standing alone do not suffice to make out a constitutional case. Another recent case on this issue, Galloway v. Town of Greece, is particularly instructive. While the Court there did find that there was a violation of the establishment cause in that case, they emphasized what they did not hold. They did not hold that the town could not open its public meetings with a prayer or invocation, nor did they hold that any prayers offered in this context must be blandly non-sectarian, a requirement that town officials censor the invocations offered beyond the limited requirement recognized in Marsh that prayer givers be advised that they may not proselytize for or disparage particular religions is not only not required by the Constitution, but risks establishing a civic religion of its own. And indeed, in Galloway v. Greece, the Court listed a litany of ways in which the policy as implemented by the Town of Greece could have been constitutional, and Lancaster meets each and every one of those tests. In the Galloway case, the Court took issue with the fact that the Town of Greece didn't explain that it intended the prayers to solemnize board meetings. That's not the case here. Lancaster's policy expressly states at paragraph 1, in order to solemnize proceedings of the City Council, it is the policy of the City Council to allow for an invocation or prayer to be offered at its meetings for the benefit of the City Council and the community. And in its final paragraph, it says at paragraph 8, this policy is not intended and shall not be implemented or construed in any way to affiliate the City Council with nor express the City Council's preference for any faith or religious denomination. Rather, this policy is intended to acknowledge and express the City Council's respect for the diversity of religious denominations and faiths represented and practiced among the citizens of Lancaster. The next way the Galloway Court stated that the Town of Greece could have made its approach constitutional was it could have informed prayer givers that invocations were not to be exploited as an effort to convert others to the particular faith of the invocational speaker, nor to disparage any faith or belief different than that of the invocational speaker. Here, Lancaster does exactly that when it sends its invitations to potential invocational speakers. The invocation policy and the invocation itself, the letter sent to the congregations, expressly states, to maintain a spirit of respect and ecumenism, the City Council requests only that the prayer opportunity not be exploited as an effort to convert others to the particular faith of the invocational speaker, nor to disparage any faith or belief different than that of the invocational speaker. Finally, the Court in Galloway took issue with the fact that the Town of Greece didn't make any effort to explain the nature of its prayer program. Here, Lancaster actually went to great lengths to explain its prayer program, placing Measure I on its ballot. Measure I described the program generally and asked the electorate whether, in response to a recent complaint with respect to the invocations that contained reference to Jesus Christ, shall the City Council continue its invocation policy in randomly selecting local clergy of different faiths to deliver the invocation without restricting the content based on their beliefs, including references to Jesus Christ. And as testimony before the District Court showed, the City Clerk testified that this was a well-known and controversial measure. Therefore, the people of the City of Lancaster were well aware that the City of Lancaster's policy is to randomly select local clergy of different faiths, unlike the Town of Greece, with which failure the Court took issue in Galloway. If it is unconstitutional, of course, the fact that it has overwhelming support by the majority of the voters would be irrelevant. Absolutely, Your Honor, and that is not the point I'm making. The point I'm making is, in Galloway v. Greece, the Court took issue with the fact that the town didn't advise its people that this was a random policy of selection. In Lancaster, that was most certainly well-known in the community. It was placed on the ballot. The exact nature of the policy was laid out. Everyone was aware that Lancaster selects on a random basis. That was my point. Not that the electorate's vote is immaterial to the constitutionality. Absolutely immaterial. Turning to the issue of a remedy, the folly of Appellant's arguments is aptly demonstrated by any effort to craft a remedy for the alleged but unproven constitutional violation asserted here. Any effort to craft a rule governing the content of legislative invocations inevitably runs afoul of the free speech rights of the invocational speaker and would require Lancaster to tell people how to pray. To evaluate the constitutionality of a rule restricting the viewpoint from which a legislative prayer is given, the Court must consider whether it is government speech or private speech and if private speech, in what form it takes place. Now, Appellants have argued that the legislative invocations are government speech. We would take the opposite position, that they are indeed private speech. But critically, regardless of whether the speech is government or private speech, Lancaster's policy is constitutional. If it is government speech, then Marsh holds that a far less inclusive policy than Lancaster's is constitutional and far more Christ-centric, far more Christian prayers than the one given by Bishop Hearn's past constitutional muster. If it is private speech, then the free speech rights of the third-party volunteer, invocation givers, serve to strengthen the constitutionality of Lancaster's policy of not telling people how to pray. Now, in determining that this is, in fact, private speech, there's a four-part test that the Ninth Circuit has established to determine that issue. That policy, that four-part test begins with the purpose of the invocation policy. Here, the purpose is set forth in the... The proposition is that the city prevails regardless of whether it's private speech or public speech. Absolutely, Your Honor. But you believe it's private speech? I do believe it's private speech, Your Honor, largely because editorial control is exercised exclusively by the speaker. Lancaster exercises no editorial control both under the policy and as a factual matter as found by the district court because the literal speaker is literally the invocation giver. The fact that the court routinely uses this as an opening ceremony make it the council's action and make it public speech. I think what you're saying is because it's part of the agenda for the city council meetings that it's public speech, excuse me, government speech. By that argument, then everyone who comes before the public comment portion of the city council meeting, which is part of every agenda, and everyone who comes before the city council and speaks to an issue listed on the agenda is engaged in government speech. And I would submit that they most certainly are not. That is private speech petitioning their government. If they say something out of line and get sued for libel, would they have protection that they were in a public role, they were acting in a legislative capacity? They would be protected and speaking to an issue of public interest. They would be protected there, yes. But it's not government speech. When one comes before the city council at the … Do we have to decide in this case whether this is government speech or private speech? No, we don't get there, Your Honor, because the prayer opportunity provided by the city of Lancaster, that is the portion of the program controlled by Lancaster, the preparation of the congregations list, the providing of the opportunity, the first come, first serve scheduling, the non-inquiry into the faith or belief or content of any particular invocation, all lead to the conclusion that the prayer opportunity has not been exploited by Lancaster to proselytize for anyone or disparage any other faith or belief. Indeed, Lancaster expressly requests that its invocation givers not proselytize or try and convert and that they not disparage any faith or belief, that they speak from their own faith or belief stance but not disparage others. Do you give them a time limit? I don't know. No, I don't believe there is any time limit. No. There have been prayers that have been exceedingly short and there have been prayers that have been rather long. Just like sermons or opinions. Or arguments. Yes, they vary in length. There are time limits, and I see my sum-up light has come up on me, and I shall. The marsh makes it clear that the issue before this court is whether Lancaster has exploited the prayer opportunity. And as determined by the district court, appellants have presented no evidence or argument to suggest that the April 27th prayer opportunity was exploited to proselytize anyone or disparage any other faith or belief and have not contended that it had that purpose or effect. They haven't even contended that the invocation was to proselytize or disparage. Indeed, they cannot based on its text. That being the case, marsh prohibits this court from reviewing the content of the April 27th invocation that is the subject of this suit. However, even if this court considers the content of the April 27th invocation, a single reference to Jesus or Jesus Christ does not render the invocation unconstitutional. Marsh prohibits proselytization, a form of advancement that is more aggressive than a mere sectarian reference. And indeed, the singular reference to Jesus in Bishop Hearn's invocation was certainly far less Christ-centric than many of the prayers that were the subject of a marsh case. This court shall reject appellants' attempt to blur or completely ignore the distinction between the prayer opportunity provided by Lancaster and the content of a particular prayer which is given by a third-party volunteer because accepting that argument will essentially overrule marsh. The April 27th invocation was consistent with the unambiguous and unbroken history of more than 200 years of opening sessions of Congress with invocations that frequently include a reference to Jesus or Jesus Christ. It fell squarely within the holding of marsh and was entirely constitutional. This court should decline appellants' invitation to implicitly overrule marsh or to require Lancaster to dictate to third-party volunteers how they should pray. Instead, this court should follow marsh and look at the prayer opportunity provided by Lancaster and, as the district court held, find that it has not been abused to proselytize for anyone or disparage any other faith or belief. The court should uphold the constitutionality of Lancaster's policy and the April 27th invocation. Thank you, counsel. Mr. Diamond, you have some reserved time. Thank you very much. There is essentially no binding precedent that would govern how you make the decision in this case. You guys are on your own here, but you have all these opinions to look at. Thank you. On the issue of – except I do say the Allegheny case points you in the right direction. But as far as a single reference to Jesus Christ – I would certainly be looking at Allegheny. I recommend it heartily. The Galloway case, it's interesting. The city of Lancaster went out of its way to continue to cite the Galloway case when it was at the district court level for a particular proposition. Later, of course, the Second Circuit reversed Galloway in a published decision at 681 Fed 3rd 20. And by the way, the town of Greece has asked the U.S. Supreme Court to extend its time in which to petition for certiorari. So Galloway is not yet final. A cert petition could be filed as late as mid-December. We don't know whether one will be filed. But in Galloway – Don't read if you have a few seconds left, if you don't mind. We can read Galloway. Tell me about Stanton because that's a case that they relied on. You don't try to distinguish it. What do you do with the display on state-issued specialty license plates being private speech? That was a situation where it did not involve the Establishment Clause. That was just a question of whether the drivers in Arizona could display something on the license plate. And what if you find that offensive and you don't agree with that message? But that's not – These are people just driving along in city streets and on the highways. We're talking in our case here of going to the city council of Lancaster to conduct business. There is no option to go elsewhere. If you want to deal with the city of Lancaster and their city council, you have to go to the meeting. You have to wait until you are called to speak. And in the meantime, they can see whether or not you're saying amen to the prayer to Jesus. Thank you, counsel. Your time has expired. Okay. Yes. The case just argued will be submitted for decision. But before doing that, we would very much like to extend our appreciation to counsel on both sides for a particularly well-argued, well-briefed case. It's a great pleasure. It's a difficult case, but it's a great pleasure to have outstanding counsel and good briefing. Thank you very much. Thank you very much.
judges: Zouhary, Goodwin, O'Scannlain